FILED '11 MAY 16 09:36 USDC-ORE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | | |
|---|---|---|
| TIMOTHY ALAN STROUD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 10-6171-HO |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MARC THALACKER, individually and as | ) | |
| Manager of Three Sisters Irrigation | ) | |
| District; THREE SISTERS IRRIGATION | ) | |
| DISTRICT, a municipal corporation; | ) | |
| GLENN COOPER, individually and as a | ) | |
| Member of Three Sisters Irrigation | ) | |
| District; STEVE SIMPSON, | ) | |
| individually and as a Member of | ) | |
| Three Sisters Irrigation District; | ) | |
| LARRY BLANTON, Sheriff of Deschutes | ) | |
| County, Oregon; CAPTAIN TIM EDWARDS, | ) | |
| individually and as a deputy sheriff | ) | |
| of Deschutes County, Oregon, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Timothy Stroud, brings this action asserting

violation of his Fourth and Fourteenth Amendment rights under 42

U.S.C. § 1983.   In addition, plaintiff asserts claims for false arrest and assault and battery.

Jan Daggett owns property in the McKenzie Canyon of Deschutes County, Oregon.   Squaw Creek Irrigation Company constructed ditches, canals, and flumes for general irrigation purposes in the area on and around where Daggett's property lies.   In 1918, the water users served by Squaw Creek formed a municipal corporation which acquired all of the irrigation works and rights of Squaw Creek.   In 2004, this municipal corporation became known as defendant Three Sisters Irrigation District.   Defendant Marc Thalacker is the manager of the District.

The facilities of Squaw Creek included the Black Butte Canal, part of which crosses what is now Daggett's property.   The District diverts water from Whychus Creek at a point approximately 1.8 miles southwest of Daggett's property into a reservoir and then into Black Butte Canal.   The flow through this channel eventually flows through Daggett's property and continues in a northeasterly direction until it is diverted for farm land use within the District.

In the Spring of 2010, Three Rivers Irrigation district engaged in the process of piping an irrigation channel in the Black Butte Canal.   The project included piping through the channel on Daggett's property.   Daggett opposed the piping and enlisted the help of several others, including plaintiff, to protest the project

through her property.  Daggett asserts that the District does not have an easement for a right of way across her property.

Prior to April 4, 2010, Defendant Captain Tim Edwards, a deputy sheriff in Deschutes County, and defendant Sheriff Larry Blanton met with Daggett to discuss her protesting activities and warned her that if people became confrontational, arrests would be made.

On April 5, 2010, Three Sisters Irrigation District engaged in installation of the pipeline across Daggett's land.  Plaintiff placed himself and vehicles in a position to block the work.  He stood behind an excavator, touched it while it was moving, drove a van and other vehicles into the area being worked on, and took action to prevent removal of the vehicles. In short, plaintiff intended to interfere with the project and his actions had the potential to create conflict.

Thalacker contacted the Sheriff's Office and the Office dispatched deputies to the scene, including defendant Edwards. Edwards asked Thalacker if he wanted to make a citizen's arrest. When Thalacker responded yes, Edwards directed a deputy to fill out a citation charging plaintiff with the crimes of disorderly conduct, criminal mischief, and criminal trespass.  Thalacker read the citation and signed it.  Sheriff's deputies arrested plaintiff and took him into custody.  No one from the Three sisters

Irrigation District used any physical efforts to remove or confine plaintiff.

Defendants Thalacker and Three Sisters Irrigation District move for summary judgment as to the section 1983 and false arrest claims against them. Defendants Blanton and Edwards move for summary judgment as to all claims against them. Plaintiff seeks partial summary judgment as to the section 1983 claim and false arrest claim against defendants Thalacker and Three sisters Irrigation District on the issue of liability.

A.    Defendants Thalacker and Three Sisters Irrigation District's Motion for Summary Judgment (#7)

   1.    Section 1983 Claim

      a.    State Actors

42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To prevail under section 1983, plaintiff must demonstrate that (1) the defendants acting under color of state law (2) deprived plaintiff of rights secured by the Fourth and Fourteenth

4 - ORDER

Amendments. See Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986).

Plaintiff implies that Three Sisters Irrigation District's status as a municipal corporation and Thalacker's status as its manager make his and its actions under color of law. However, plaintiff fails to cite what grant of authority under state law permits the District or its members to arrest citizens. Moreover, municipal corporations are not subject to respondeat superior liability under section 1983. Monell v. Department of Social Services, 436 U.S. 658, 665 (1978).

The deprivation of a constitutional right must be under color of law for liability to attach under section 1983.

> A person acts under color of state law, if he "exercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." . . . [A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.

Dang Vang v. Vang Xiong Toyed, 944 F.2d 476, 479 (9th Cir. 1991) (quoting West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255 (1988)). Because Thalacker's position did not provide him with the authority to make arrests, his actions in this area are those of a private individual. Thus, the conduct causing the deprivation of a federal right must be fairly attributable to the state. Determining whether the conduct is fairly attributable to the state involves a two-part approach:  First, the deprivation must be

caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state.  Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.  <u>Lugar v. Edmonson Oil Co</u>, 457 U.S. 922, 937 (1982).  The party charged, although a private party, may be a state actor because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state.  <u>Id</u>.  This is a fact-bound inquiry and only by sifting facts and weighing circumstances can the involvement of the state in private conduct be attributed its true significance.  <u>Id</u>. at 939.

While the evidence does show that Thalacker wanted to make a citizen's arrest, the Sheriff's deputies actually effectuated the arrest.  Nonetheless, the ability to effectuate the citizen's arrest is made possible with authority granted by state law:

> (1) A private person may arrest another person for any crime committed in the presence of the private person if the private person has probable cause to  believe the arrested person committed the crime. A private person making such an arrest shall, without unnecessary delay, take the arrested person before a  magistrate or deliver the arrested person to a peace officer.   (2) In order to make the arrest a private person may use physical force as is  justifiable under ORS 161.255.

ORS § 133.225.  The Ninth Circuit has noted that no federal court has concluded that a citizen's arrest constitutes state action under color of state law.  The deprivation must be caused by the exercise of some right or privilege created by the state.  Where

private parties wrongfully invoke a citizen's arrest statute, there cannot be an exercise of a state created right. <u>Collins v. Womancare</u>, 878 F.2d 1145, 1152-53 (9th Cir. 1989). Because plaintiff in fact argues that the arrest was improper, plaintiff cannot at the same time argue that Thalacker was acting under color of state law in making a citizen's arrest. In addition, merely complaining to the police, or executing a complaint in an attempt to persuade the police to make an arrest is not state action on the part of a private party. <u>Collins</u>, 878 F.2d at 1150. Plaintiff thus asserts that the arrest resulted from a conspiracy between Three Sisters Irrigation District/Thalacker and the Sheriff's Office.

One can establish joint action by demonstrating the existence of a conspiracy, but "[j]oint action also exists where a private party is 'a willful participant in joint action with the state or its agents.'" <u>Collins</u>, 878 F.2d at 1154. The core question is "whether the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity." <u>Id</u>. As a result, joint action requires "a substantial degree of cooperative action." <u>Id</u>. In short, joint action exists, not only where a conspiracy is alleged, but also where "a private party is 'a willful participant in joint action with the State or its agents.'" <u>Collins</u>, 878 F.2d at 1154. Nonetheless, a private person is only

liable under a joint action theory "if the particular actions challenged are inextricably intertwined with those of the government." Mathis v. Pacific Gas & Electric Co., 75 F.3d 498, 503 (9th Cir. 1996) (finding no state action because plaintiff failed to present evidence of direct or indirect support of state officials in actual decision to terminate him, despite evidence that PG & E conducted the investigation that led to information implicating plaintiff in drug transactions, in close cooperation with County drug task force).

In this case, no reasonable trier of fact could conclude that the Sheriff's deputies did not exercise independent judgment in arresting plaintiff. While Thalacker did advise the Sheriff's Office that Jan Daggett would be protesting the project, the Sheriff's Office sought advice from legal counsel, Sue Brewster, who evaluated the documents regarding the project and advised the Sheriff that it appeared that the District was acting lawfully in piping the canal. See Collins, 878 F.2d at 1155-56 (granting summary judgment where there was no evidence to suggest lack of independent judgment on the part of the police in a citizen's arrest).

Plaintiff's contention that Thalacker and the Sheriff's deputies were acting in concert with each other amounts to nothing more than a description of a citizen making a complaint and the officer making an independent judgment that an arrest was

8 - ORDER

warranted.   Edwards conducted an investigation on the site of the
protest, asked Thalacker if he wanted to make a citizen's arrest,
and determined what charges were applicable.   Edwards merely asked
Thalacker   to   sign   the   citation.      Sheriff's   deputies   then
effectuated the arrest.

When Captain Edwards arrived at the protest, Thalacker pointed
out plaintiff and a women who were in the work area, standing in
front of a work truck and attempting to act as an obstacle.
Thalacker stated that three people laid down[1] in front in front of
the   excavator   and   climbed   on   equipment   creating   a   hazardous
situation   and   interfering   with   work.[2]      Thalacker   also   showed
Edwards   a   picture   depicting   plaintiff   in   the   way   and   another
individual lying down on the ground in the tracks of the work area.
In addition, deputies independently observed vehicles parked in the
work area blocking the project and were informed that plaintiff had
placed them there.   Deputies were provided with information that
plaintiff had taken action to unhook cables placed on the vehicles
by  District  personnel  who  were  trying  to  remove  them.      The
information   provided   to   Edwards   caused   him   to   conclude   that
criminal mischief, criminal trespass, and disorderly conduct had

---

[1]There  is  a  dispute  as  to  whether  plaintiff  actually  laid  down
on  the  ground,  but  plaintiff  does  not  dispute  that  he  did  stand  in
front of work equipment intending to act as an obstacle.

[2]Plaintiff  also  disputes  that  he  climbed  on  the  truck,  but  does
concede   that   he   touched   the   equipment   and   leaned   against   the
equipment   in   an   effort   to   interfere   with   the   project.      Plaintiff
also concedes that he created a safety issue.

9 - ORDER

taken place.  As noted above, the action on the part of anyone associated with Three Sisters Irrigation District amounts to nothing more than a private citizen executing a complaint in an attempt to persuade the Sheriff's office to make an arrest. Indeed, the Sheriff's Office's official policy is that deputies must independently review the circumstances surrounding a citizen's arrest to ensure it is valid.  Sheriff's Policy 6.05.  Accordingly, summary judgment in favor of Thalacker and Three Sisters Irrigation District is appropriate as to the section 1983 claim.

### b.   Qualified Immunity

These defendants also assert qualified immunity, assuming they are state actors for purposes of the arrest, contending that plaintiff cannot establish a policy or custom on the part of the District to violate constitutional rights and that the decision to make a citizen's arrest has only occurred on this one occasion. Plaintiff merely offers the conclusory allegation that Thalacker has a policy of calling the police for assistance against protestors.  Even if plaintiff had any evidence to support such a policy on Thalacker's part, he presents no evidence to suggest Thalacker had authority as a policy maker for the District.

Congress did not intend local governments to be held liable under section 1983 unless action pursuant to official government policy of some nature caused a constitutional tort." Monell v. New

York City Dept. of Social Services, 436 U.S. 658, 691 (1978).   A local government may be responsible for a single decision by government policymakers under appropriate circumstances.   Where a decision to adopt a particular course of action is properly made by that government's authorized decisionmakers, it represents an act of official government "policy" as that term is commonly understood.   Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).   Where action is directed by those who establish governmental policy, the local government is equally responsible whether that action is to be taken only once or to be taken repeatedly.   See, id.  However, not every decision by governmental officers automatically subjects the government to section 1983 liability.   Government liability attaches only where the decisionmaker possesses final authority to establish government policy with respect to the action ordered.   Id.  The fact that a particular official, even a policymaking official, has discretion in the exercise of particular functions does not, without more, give rise to government liability based on an exercise of that discretion.   The official, Thalacker, must also be responsible for establishing final government policy respecting such activity before the District can be held liable.   See id. at 482-83.

> "As with other questions of state law relevant to the
> application of federal law, the identification of those
> officials whose decisions represent the official policy
> of the local governmental unit is itself a legal question
> to be resolved by the trial judge before the case is
> submitted to the jury.   Reviewing the relevant legal

> materials, including state and local positive law, as
> well as " 'custom or usage' having the force of law,"
> Praprotnik, supra, at 124, n. 1, 108 S.Ct., at 924, n. 1,
> the trial judge must identify those officials or
> governmental bodies who speak with final policymaking
> authority for the local governmental actor concerning the
> action alleged to have caused the particular
> constitutional or statutory violation at issue. Once
> those officials who have the power to make official
> policy on a particular issue have been identified, it is
> for the jury to determine whether their decisions have
> caused the deprivation of rights at issue by policies
> which affirmatively command that it occur, see Monell,
> 436 U.S., at 661, n. 2, 98 S.Ct., at 2020, n. 2, or by
> acquiescence in a longstanding practice or custom which
> constitutes the "standard operating procedure" of the
> local governmental entity. See Pembaur, supra, at
> 485-487, 106 S.Ct., at 1301-1302 (WHITE, J, concurring)."

Jett v. Dallas Independent School Dist., 491 U.S. 701, 737 (1989).

The term "policy" includes within its definition not only policy in the ordinary sense of a rule or practice applicable in many situations. It also includes "a course of action tailored to a particular situation and not intended to control decisions in later situations." Pembaur, 475 U.S. at 481. When determining whether an individual has final policymaking authority, courts ask whether he has authority "in a particular area, or on a particular issue." McMillian v. Monroe County, 520 U.S. 781, 785 (1997). For Thalacker to be a final policymaker, he must be in a position of authority such that a final decision by him may appropriately be attributed to the District.

To determine whether the decisionmaker is a final policymaker, the court looks first to state law. Jett, 491 U.S. at 737. In this case, the Board of Directors of the District are charged with

establishing the rules and regulations of the District.   ORS §
545.221.

Depending on the circumstances, however, courts may also look
to the way a local government entity operates in practice. Jett,
491 U.S. at 737 (trial judge must identify official policymakers
based on "state and local positive law, as well as custom or usage
having the force of law").  While "[a]uthority to make [District]
policy may be granted directly by a legislative enactment," it may
also be "delegated by an official who possesses such authority."
Pembaur 475 U.S. at 483.   No evidence of delegation of policy
making authority from the Board to Thalacker has been presented.
Nor has plaintiff presented evidence of ratification of Thalacker's
decision.  For this additional reason summary judgment with respect
to the section 1983 claim against the District is appropriate.


        2.    False Arrest

Plaintiff alleges a false arrest claim against all defendants.
Thalacker is immune from liability under ORS § ORS 30.265(1) in his
official  capacity.    If  plaintiff  wishes  to  proceed  against
Thalacker, he would have no claim against the District under a
respondeat superior theory, but the District would be substituted
in  for  the  claim  against  Thalacker  in  his  official  capacity
pursuant to the Oregon Tort Claims Act.

Plaintiff makes much of the contention that he was arrested for lying down in the ditch and climbing on the equipment--which he denies. However, as will be discussed below, probable cause to make an arrest is judged based on the collective information of the police regardless of the reason stated for the arrest. It is undisputed that plaintiff intended to interfere with the project and that his actions had the potential to create conflict and were a safety risk. Assuming that there was a reasonable belief that the District had the right to conduct the project, probable cause certainly existed for the crimes for which plaintiff was charged, as will be discussed below. However, for purposes of the motion by Thalacker and the District, the motion for summary judgment is granted because these defendants did not arrest plaintiff.

Plaintiff offers the conclusory allegation that there was a conspiracy between Thalacker and the Sheriff's department to arrest him. Plaintiff offers insufficient evidence of such conspiracy. Plaintiff speculates that there "was an agreement and a meeting of the minds between" defendants, but the only supported evidence is Thalacker's signing of the citation. As noted above, there was no joint action or conspiracy in this case with respect to the arrest.

To prevail on a false arrest claim, plaintiff must show: (1) defendant confined plaintiff; (2) defendant must intend to accomplish the act that causes confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful.

Ross v. City of Eugene, 151 Or. App. 656, 663 (1997).   In this case, neither Thalacker nor any member of Three Sisters Irrigation District confined plaintiff.[3]   Accordingly, the motion for summary judgment is granted with respect to the false arrest claim.

B.   Plaintiff's Motion for Summary Judgment (#25)

Plaintiff seeks summary judgment as to the liability of defendants Thalacker and Three Sisters Irrigation District. however, because these defendant are entitled to summary judgment for the reasons stated above, the motion is denied.

C.   Defendants Blanton and Edward's Motion for Summary Judgment (#17)

1.   Section 1983 Claim

As noted above, plaintiff alleges claims for violation of his Fourth and Fourteenth Amendment rights asserting a lack of probable cause for his arrest.   Plaintiff clings to the assertion that Thalacker arrested plaintiff and lacked probable cause to do so. However, because Sheriff's deputies actually effectuated the arrest, probable cause must be judge from their knowledge.

---

[3]A private person may arrest another for a crime committed in their presence and in making the arrest shall take the arrested person before a magistrate or deliver the arrested person to a peace office.   ORS 133.225(1).   No member of Three Sisters Irrigation District took plaintiff to a magistrate or a peace officer.   The sheriff's deputies were at the scene and plaintiff was taken into their custody without the aid of Thalacker. Thalacker merely made a complaint.

15 - ORDER

Plaintiff's assertions rest primarily on the argument that Three Sisters Irrigation District had no right of way on Daggett's property. Plaintiff supports this argument with counsel's statement that

> I have personally reviewed the files and records of the Prineville[,] Oregon and the Portland, Oregon offices of the [D]epartment of the [I]nterior, Bureau of Land Management and I was unable to find any document or map that disclosed the Secretary of the Interior ever approved the easement for a right of way to TSID's predecessor across the property of Jan Daggett.

Declaration of Claud Ingram (#36) at p. 2.[4] Presumably counsel did not intend to make himself a witness in this case, but no affidavit from anyone in charge of such records has been presented to demonstrate a lack of a right of way. Counsel's statement is likely competent evidence to demonstrate the lack of a right of way with respect to the subject area.

Given the long history associated with the Black Butte Canal and the right of way associated with it, at best, the record may not be entirely clear as to whether the right of way exists.[5] However, it does appear that Thalacker reasonably believed that the District had a right of way and the information he communicated to the Sheriff's Office also provided a reasonable belief that the

---

[4]Jan Daggett also offers her own opinion that the area in question is a natural stream, but this does not create an issue of fact.

[5]It appears that Jan Daggett voluntarily dismissed her lawsuit seeking a declaration that the right of way did not exist and Three Sisters Irrigation District completed the project through Daggett's property.

right of way exists.    Thalacker provided the following in support
of the right of way:

       3. Submitted herewith as Appendix pages 45 – 52,
inclusive, is a portion of the filing by George W. Brown
under the Desert Land Act for the NW¼ of the NE¼ of
Section 27 lying immediately north of Ms. Daggett's land
and the land Ms. Daggett sold to Doris Kozlovic in 2001.
I personally obtained the Brown records from the National
Archives in Washington, D.C. The Black Butte Canal exits
[on] Ms. Daggett's property flowing in a northeasterly
direction, crosses the Northwest corner of the Kozlovic
property, enters the land homesteaded by Mr. Brown, and
continues in a northeasterly direction. Any water
originating in or about Ms. Daggett's land would
naturally flow downhill onto Mr. Brown's property. If, in
fact, there was a natural stream in McKenzie Canyon, it
would flow downhill onto the property homesteaded by Mr.
Brown. The 45 pages of records pertaining to Mr. Brown's
homestead include his Declaration, four Affidavits in
support of his Declaration, two interim reports submitted
by Mr. Brown, and his Final Proof Testimony. The
Declaration of Applicant Form required Mr. Brown to list
streams or bodies of water that border on the lands. He
states "none." It then asks for watercourses, springs, or
other bodies of water that pass through or on said land.
He lists only the "Squaw Creek Irrigating Ditch." App.
46. On the Testimony Of Claimant, question number 4, Mr.
Brown was required to describe the soils, the proximity
of the land to the water, natural streams, springs, and
bodies of water upon or passing through it, and whether
those springs or streams provide natural irrigation. In
answering the question, he states, "the Squaw Creek
Irrigation Cos. canal passes through the land; no natural
streams or springs on the land." App. 48. Essentially the
same question appears on the Testimony of Witness Final
Proof as Question 3. The four witnesses each provided the
same answer "Squaw Creek Irrigation Cos. Main Canal
passes through it; there are no natural streams, springs
or other bodies of water upon or pass through it;." App.
50. Many of the parcels of land in the District were
patented under the same Federal Acts as Mr. Brown's land.
       4. Based on the historical research I conducted, the
original records relating to the homesteading of the land
now included in the Three Sisters Irrigation District and
the lands relevant to this case are located at the
National Archives in Washington, D.C. and in the Oregon

Water Resources Department Archives in Salem, Oregon. The reports by Inspector Burt referred to in my original Declaration (App 1 through 38, inclusive) were obtained by me from the National Archives in Washington, D.C.

5. Submitted herewith as Appendix pages 53 - 58, inclusive, are a portion of the record I obtained from the Oregon Department of Water Resources Archives in Salem, Oregon, of the action by the State of Oregon at the request of the Squaw Creek Irrigation Company to reserve the lands now in the District for homesteading under the Desert Land Act. The land reserved by the State of Oregon included the entire NE¼ of Section 27, Township 14 South, Range 11 E., W.M., the location of the Daggett property. The records include: (a) the request to the State from Squaw Creek Irrigation Company including the map of the irrigation system, the survey of the irrigation canals, various affidavits, correspondence and other documents; and (b) the documents submitted to the United States General Land Office verifying the information provided by the Company and requesting that the land be held for homesteading under the Act.

6. Attached hereto as Appendix pages 59 - 64, inclusive, are a portion of the survey of the Black Butte Canal referred to therein as the Squaw Creek Irrigation Company's Canal for that portion of the canal where it enters Township 14 South, Range 11 E., W.M. from Township 15, crosses Township 14 South, Range 11 E., W.M., including the Daggett property, and then exits Range 11 E. and enters Range 12. This survey was submitted by the Company to the State for review and then by the State to the General Land Office. The Canal is shown on the map submitted by the Company that was then reviewed and submitted by Special Agent Burt and accepted by the United States (App 39) as showing the correct location of the Company's Canals. The map shows the Black Butte Canal which flowed across Ms. Daggett's land, now the location of the District's pipeline. The documents were obtained personally by me from the Department of Water Resources Archive in Salem, Oregon.

Declaration of Marc Thalacker (#45) at pp. 2-5.

The existence of the canal and its use for irrigation were investigated and confirmed in reports by Burt in 1915 and 1924 showing that the Secretary of the Interior approved the right of

way.  As noted in <u>Kern River Co. v. United States</u>, 257 U.S. 147,

151-52 (1921):

> The Act of 1891, §§ 18-21, provided for rights of way
> through the public lands and reservations of the United
> States for ditches, canals and reservoirs for the purpose
> of irrigation but not for any other purpose. These rights
> of way were to be obtained by making application at the
> local land office and ultimately securing the approval by
> the Secretary of the Interior of a map of the ditch,
> canal or reservoir. There was no provision for a patent.
> The grant was to become effective when the approval was
> given; that is to say, the right of way was then to vest
> in the applicant for the purpose indicated in the act....
> The right of way intended by the act was neither a mere
> easement nor a fee simple absolute, but a limited fee on
> an implied condition of reverter in the event the grantee
> ceased to use or retain the land for the purpose
> indicated in the act.

Daggett agrees that the District has used the "stream bed"

during irrigation season to divert water into irrigation ditches.[6]

Accordingly, there is at least a reasonable belief that the right

of way exists and it is likely conclusively established.

As noted above, the Sheriff's Office sought legal counsel to

review the documents demonstrating the right of way and received

confirmation from counsel that the District was acting lawfully in

piping the canal.  Captain Edwards received such confirmation prior

to any arrests.

Plaintiff asserts section 1983 claims against Captain Edwards

in his individual and official capacity and against Sheriff Blanton

---

[6]Daggett's objection to the project is based on her opinion
that the construction created substantial added burdens to her
property and adversely affected her property by creating an eyesore
and an environment for noxious weeds and erosion among other
things.

19 - ORDER

in his official capacity.  The validity of the arrest under section 1983 is analyzed under the Fourth Amendment, not due process standards.  Albright v. Oliver, 510 U.S. 266, 281 (1994).  If probable cause for the arrest existed, the arrest did not violate the Fourth Amendment.  United States v. Del Vizo, 918 F.2d 821, 825 (9th Cir. 1990).

Probable cause is a flexible, common-sense standard.  It merely requires that the facts available to the officer would lead a man of reasonable caution to believe that a crime has taken place; it does not demand any showing that such a belief be correct or more likely true than false.  Texas v. Brown, 460 U.S. 730, 742 (1983).  A determination of probable cause depends on the totality of the circumstances.  Illinois v Gates, 462 U.S. 213, 238 (1983).  In this case, the Sheriff's deputies may not solely rely on the claim of a citizen witness that a crime has occurred, but must independently investigate the basis of the witness' knowledge or interview other witnesses.  Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001)(citing Fuller v. M.G. Jewelry, 950 F.2d 1437, 1444 (9th Cir. 1991)).  A sufficient basis of knowledge is established if the victim provides "'facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator.'"  Fuller, 950 F.2d at 1444 (quoting People v. Ramey, 545 P.2d 1333, 1336 (1976)).  Furthermore, under the collective

knowledge doctrine, courts must determine whether an arrest complied with the Fourth Amendment by looking to the collective knowledge of all the officers involved in the investigation even if all of the information known to the law enforcement officers involved is not communicated to the officer who actually makes the arrest. <u>United States v. Sutton</u>, 794 F.2d 1415, 1426 (9th Cir. 1986).

As noted above, plaintiff was arrested for disorderly conduct, criminal mischief, obstruction of governmental or judicial administration, and interfering with access to or use of public water works.

A person commits the crime of obstructing governmental or judicial administration if the person intentionally obstructs, impairs or hinders the administration of law or other governmental or judicial function by means of intimidation, force, physical or economic interference or obstacle. ORS § 162.235(1). This crime does not apply to the obstruction of unlawful governmental or judicial action or interference with the making of an arrest. ORS § 162.235(2). Although it is unclear if the construction activities constitute governmental or merely a proprietary function, the officers had probable cause to believe that plaintiff violated this statute. For plaintiff to obstruct a governmental function by means of a "physical interference or obstacle" requires some conduct or act on plaintiff's part that results in a bodily or

21 - ORDER

material obstruction to a governmental activity or process. Here,
the Sheriff's deputies knew that plaintiff had placed himself in
the way of the excavator (it does not matter if he was lying down
or not) and had placed vehicles in the way. The deputies also
reasonably believed that Three Sisters Irrigation District was
exercising a governmental function in maintaining the irrigation
system under a totality of the circumstances.

> A person commits the crime of disorderly conduct in the
> second degree if, with intent to cause public
> inconvenience, annoyance or alarm, or recklessly creating
> a risk thereof, the person:
>
> > (a) Engages in fighting or in violent,
> > tumultuous or threatening behavior;
> >
> > (b) Makes unreasonable noise;
> >
> > © Disturbs any lawful assembly of persons
> > without lawful authority;
> >
> > (d) Obstructs vehicular or pedestrian traffic
> > on a public way;
> >
> > (e) Congregates with other persons in a public
> > place and refuses to comply with a lawful
> > order of the police to disperse;
> >
> > (f) Initiates or circulates a report, knowing
> > it to be false, concerning an alleged or
> > impending fire, explosion, crime, catastrophe
> > or other emergency; or
> >
> > (g) Creates a hazardous or physically
> > offensive condition by any act which the
> > person is not licensed or privileged to do.

ORS § 166.025(1).

Because the deputies had a reasonable belief that the channel
constituted a right of way and there is no dispute that plaintiff

obstructed the District's vehicles, there was probable cause to arrest plaintiff for disorderly conduct.    In addition, plaintiff acknowledges that his actions created a safety issue and the potential for conflict.  The Deputies had probable cause to believe plaintiff did not have the privilege to do so.[7]

A person commits the crime of criminal mischief in the third degree if, with intent to cause substantial inconvenience to the owner or to another person, and having no right to do so nor reasonable ground to believe that the person has such right, the person tampers or interferes with the property of another.  ORS § 164.345.  Again, whether plaintiff climbed on the equipment does not create an issue of fact.  Plaintiff concedes he blocked the equipment in an attempt to interfere with the excavator.    The deputies had probable cause to believe that the District had the right of way and that plaintiff no right to stop the legitimate work.

Whenever any appropriator of water has the lawful right of way for the storage, diversion, or carriage of water, no person shall place or maintain any obstruction that shall interfere with the use of the works, or prevent convenient access thereto.  ORS § 540.730. The Deputies had probable cause to believe plaintiff was in

_____

[7]Plaintiff asserts First Amendment rights with respect to this charge, but he did not allege any such violation in his complaint. Moreover, plaintiff fails to make a showing that the canal constituted a public forum.

23 - ORDER

violation of this statute given their reasonable belief that the District had the right of way in the channel.

In light of the above, summary judgment is appropriate on the section 1983 claim against the Sheriff's Office defendants. In addition, Edwards is entitled to qualified immunity even if probable cause did not exist given the reasonableness of the conclusion that probable cause did exist. Qualified immunity shields the deputy from damages if a reasonable officer could have believed plaintiff's arrest to be lawful, in light of clearly established law and the information the deputy possessed. Anderson v. Creighton, 483 U.S. 635, 641 (1987). Even law enforcement officials who "reasonably but mistakenly conclude that probable cause is present" are entitled to immunity. Id. Thus, even if the right of way did not exist, the arrest was constitutional.

Finally, plaintiff fails to demonstrate a Sheriff's Office policy that resulted in any alleged violation of his rights and thus, Blanton is entitled to summary judgment in any event.


2.   False Arrest

Under the Oregon Tort Claims Act, summary judgment as to the False Arrest claim against Edwards and Blanton in their official capacities must be granted and the public body itself substituted. ORS 30.265(1). Moreover, summary judgment is appropriate because probable cause to make the arrest existed making the confinement

24 - ORDER

lawful. <u>See</u> ORS § 133.310(1) (An officer may arrest a person without a warrant if probable cause to believe the person has committed misdemeanor or other offense with a penalty greater than a class C misdemeanor). In addition, despite Edwards citing plaintiff's actions of lying down and climbing on equipment as part of the basis for arrest,

> an officer's expressed reason for making an arrest does not control a court's determination of that arrest's legality-so long as the officer acted on the belief that there was a legal justification for that action (the subjective component) and the officer's belief was objectively reasonable (the objective component). For the purposes of the subjective component of the probable cause inquiry, it is sufficient if the trial court finds (and there is evidence to support its findings) that the officer reasonably believed that he had lawful authority to act, even if the officer's subjective basis for acting turns out to be incorrect.

<u>State v. Miller</u>, 345 Or. 176, 186 (2008).

Accordingly, summary judgment is granted as to the claims against defendants Edwards and Blanton.

CONCLUSION

For the reasons stated above, defendants Thalacker and Three Sisters Irrigation District's motion for summary judgment (#7) is granted, defendants Edwards and Blanton's motion for summary judgment (#17) is granted, and plaintiff's motion for partial summary judgment (#25) is denied.

DATED this ___12th___ day of May, 2011.

_____
Michael C. Hogan
United States District Judge

25 - ORDER